STATE OF LOUISIANA
v.
TASHA LYNETTE HOTARD
No. 2008 KA 0439.
Court of Appeal of Louisiana, First Circuit.
October 31, 2008.
NOT DESIGNATED FOR PUBLICATION
JOSEPH L. WALTZ, Jr., District Attorney, Ellen Daigle Doskey, Assistant District Attorney, Counsel for Appellee State of Louisiana.
HOLLI HERRLE-CASTILLO, Counsel for Defendant/Appellant Tasha Lynette Hotard.
Before: KUHN, GUIDRY, and GAIDRY, JJ.
GAIDRY, J.
The defendant, Tasha Lynette Hotard, was charged by bill of information with possession of Schedules II and IV controlled dangerous substances, hydrocodone (count one), alprazolam (count two), and hydromorphone (count three), violations of La. R.S. 40:967C and La. R.S. 40:969C. La. R.S. 40:964. The defendant pled not guilty. After a trial by jury, the defendant was found guilty as charged on each count. The defendant was sentenced to two years imprisonment on each of the three counts, to be served consecutively. The defendant now appeals, raising the following assignments of error:
1. The trial court erred in failing to allow evidence of the defendant's prescription to be admitted into evidence.
2. The trial court erred in failing to grant a mistrial when the State argued in closing that it appeared that the defendant was "shooting up" in the car in the hospital parking garage.
3. The State failed to present information sufficient to uphold the convictions.
4. The trial court erred in imposing three consecutive sentences of two years each, when the three possession convictions arose out of a single incident.
For the following reasons, we affirm the convictions and sentences.

STATEMENT OF FACTS
On or about April 8, 2005, Craig Trahan, a security lieutenant for Terrebonne General Medical Center, received a dispatch advising him that a female subject (the defendant) was sitting in a vehicle in the Medical Arts Building parking lot slumped over the steering wheel. Trahan knocked on the vehicle in an effort to get the defendant's attention. Ultimately, the defendant awoke and he advised her to step out of the vehicle. Trahan observed a syringe containing a yellow substance in the defendant's left hand and a piece of cotton with blood spots on it in the crevice of her right arm. After further observation of the defendant's behavior, Trahan advised his dispatcher to contact the Houma Police Department.
Officer Dexter Detiveaux of the Houma Police Department (HPD) arrived at the scene and questioned the defendant. The defendant gave the officer permission to search the vehicle. The police seized a Marlboro cigarette box containing three Dilaudid (hydromorphone) pills from the center console of the vehicle. A Soma (carisoprodol) prescription pill bottle with the defendant's name on it containing twenty-two Soma pills, fourteen Lortab (hydrocodone) pills, and three and one-half Xanax (alprazolam) pills were removed from a white bag located on the front-passenger seat. Also, a syringe containing an unknown yellow substance was located on the passenger-side floorboard. The defendant testified that she had a legal prescription for hydrocodone and alprazolam and that the hydromorphone did not belong to her.

ASSIGNMENT OF ERROR NUMBER ONE
In the first assignment of error, the defendant argues that the trial court erred in granting the State's motion in limine to exclude documentation of a prescription for three drugs: Lorcet (another brand of hydrocodone), Soma, and Xanax. The defendant contends that the documentation proved that she had a valid prescription in her name for the pills that were in a prescription bottle labeled carisoprodol in her name. The defendant notes that the pharmacy stamped "Void" across the copy of the prescription to prevent reuse. The defendant further notes that the pharmacy telephone number on the prescription copy was not in service as the pharmacy and its records, located in New Orleans, were destroyed during Hurricane Katrina. The defendant contends that these factors should not have been considered in the determination of the admissibility of the evidence, but rather should have gone to the weight of the evidence. The defendant notes that while the State objected to the lack of document certification, the State did not prove that such a certification existed or was necessary. In arguing that the documentation is relevant, the defendant notes that the only issue contested regarding the possession of hydrocodone and alprazolam was whether the defendant had a legal prescription for the substances. The defendant concludes that the trial court abused its discretion in ruling the evidence inadmissible.
A criminal defendant's right to present a defense is guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution. However, constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value. State v. Governor, 331 So.2d 443, 449 (La. 1976). "Relevant evidence" is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than without the evidence. La. Code Evid. art. 401. The trial judge, in deciding the issue of relevancy, must determine whether the evidence bears a "rational" connection to the fact in issue in the case. State v. Williams, 341 So.2d 370, 374 (La. 1976). Except as limited by the Code of Evidence and other laws, all relevant evidence is admissible and all irrelevant evidence is inadmissible. La. Code Evid. art. 402. Although relevant, evidence may nonetheless be excluded, if the probative value is substantially outweighed by its prejudicial effect. See La. Code Evid. art. 403. Ultimately, questions of relevancy and admissibility are discretion calls for the trial court, and its determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. State v. Duncan, 98-1730, p. 10 (La. App. 1st Cir. 6/25/99), 738 So.2d 706, 713.
On the day of the trial, before jury selection, the State filed a motion in limine to exclude prescription documentation. The State objected to the evidence based on the fact that it was not a certified medical record, its presentation to the State the morning of the trial, the absence of proof that the prescription was filled, on the documentation being stamped void, and on the telephone number on the documentation being disconnected. The trial court granted the State's motion in limine. The evidence was proffered. In the instant case, we conclude the trial court acted within its discretion in excluding the purported copy of a prescription. Claiming the prescription was filled, the evidence offered by the defendant consists of a purported copy of a prescription, not an original. According to her testimony, the defendant went to the clinic and obtained the copy of the prescription. The defendant does not claim that the original could not be obtained by judicial process. See La. Code Evid. arts. 1002 & 1004. Despite her testimony that she went to the same clinic after its relocation to Lafayette following Hurricane Katrina, the defendant was unprepared to offer testimony by a prescribing physician or a pharmacist.
Even if we were to find a clear abuse of discretion, which we do not, any error in this regard is not structural, but rather a trial error which may or may not have prejudiced the defendant and thus is subject to harmless-error analysis. La. Code Crim. P. art. 921; See State v. Hongo, 96-2060, p. 5 (La. 12/2/97), 706 So.2d 419, 422. If the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had observed the excluded evidence, any error is harmless. The determination is based upon "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
The defendant testified that she had a prescription for the hydrocodone and alprazolam. She described the purported copy of a prescription to the jury, noting that while she was able to obtain a copy from the clinic, "void" had been written across it to prevent it from being refilled. The jury rejected this hypothesis of innocence. The admission of the evidence described by the defendant and the observation of it by the jury would not have rendered this rejection unreasonable. Considering the highly questionable nature of the document, we find that the guilty verdict actually rendered in this trial was surely unattributable to any error in its exclusion. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
In the second assignment of error, the defendant contends that the trial court erred in denying the defense motion for mistrial. The defendant notes that the motion was based on the State's remark in reference to another crime alleged to have been committed by the defendant as to which evidence was not admissible. The defendant argues that the remark was not harmless and was particularly egregious. Specifically, the district attorney stated as follows during closing arguments:
You heard because there is obviously some issue going on in this car that the security agent for the Terrebonne General Medical Center is called out to see what the heck is going on. And when he arrives what does he see? He still sees her slumped over. And when he approaches, it appears as if she's shooting up with a syringe.
The defendant notes that the State had not previously suggested that the defendant was attempting to inject pills into her veins with the syringe. The defendant further notes that the State failed to have the substance within the syringe tested.
Generally, courts may not admit evidence of other crimes to show a defendant is a man of bad character who has acted in conformity with his bad character. However, under La. Code Evid. art. 404B(1) evidence of other crimes, wrongs or acts may be introduced when it relates to conduct, formerly referred to as res gestae, that "constitutes an integral part of the act or transaction that is the subject of the present proceeding." Res gestae events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes evidence to insure that the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. State v. Colomb, 98-2813, p. 3 (La. 10/1/99), 747 So.2d 1074, 1076 (per curiam).
The res gestae doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime, if a continuous chain of events is evident under the circumstances. State v. Kimble, 407 So.2d 693, 698 (La. 1981). Integral act (res gestae) evidence in Louisiana also incorporates a rule of narrative completeness without which the State's case would lose its narrative momentum and cohesiveness. See Colomb, 98-2813 at p. 4, 747 So.2d at 1076.
The trial court may grant a mistrial for certain inappropriate remarks that come within La. Code Crim. P. art. 770, which provides in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Otherwise, an admonition to the jury may suffice, as provided in La. Code Crim. P. art. 771:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770;
* * *
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Mistrial is a drastic remedy and warranted only when substantial prejudice will otherwise result to the accused to deprive him of a fair trial. State v. Booker, XXXX-XXXX, pp. 17-18 (La. App. 1st Cir. 2/14/03), 839 So.2d 455, 467, writ denied, XXXX-XXXX (La. 10/31/03), 857 So.2d 476. A trial court's ruling denying a mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518, p. 12 (La. 1/17/01), 776 So.2d 443, 454.
During direct examination by the State, Trahan testified that when he approached the vehicle, the defendant had a syringe containing a yellow substance in her left hand and a piece of cotton with blood spots on it in the crevice of her right arm. Trahan further testified that when the defendant saw him, she hid the syringe under some items on the floorboard of the passenger side. The defendant informed Trahan that she used the syringe to inject her dogs with medication. The defendant testified during the trial that she did not have the syringe in her hand and that she did not inject herself. She further testified that her veterinarian gave the syringe to her to treat her dogs for a disease. The statements at issue by the prosecutor were in reference to Trahan's above-noted testimony. The syringe was admitted into evidence.
After denying the motion for mistrial, the trial court offered to admonish the jury in some manner. The defense objected to the trial court's ruling but ultimately suggested that the trial court remind the members of the jury that arguments of counsel are not evidence. The trial court reminded the jury as such.
Opening and closing arguments in criminal cases shall be limited to the evidence admitted, the lack of evidence, conclusions of fact that may be drawn therefrom, and the law applicable to the case. La. Code Crim. P. art. 774. The statement at issue consists of a comment on the evidence presented. Despite the defendant's contention otherwise, we find that the statement by the prosecutor at issue herein did not constitute a remark or comment on inadmissible evidence of other crimes. At any rate, the evidence at issue constitutes part of the res gestae of the crimes. It was a fair assessment of the testimony presented by State witness, Trahan. Trahan informed Officer Detiveaux of his observations, thus leading to the request for consent to search the vehicle. The prohibition against references to inadmissible evidence of other crimes under La. Code Crim. P. art. 770 does not include evidence which forms part of the res gestae. State v. Morris, 96-1008, p. 23 (La. App. 1st Cir. 3/27/97), 691 So.2d 792, 805, writ denied, 97-1077 (La.10/13/97), 703 So.2d 609. The remarks at issue were neither irrelevant nor immaterial. In the instant case, a mistrial was not mandated by La. Code of Crim. P. art. 770 or La. Code Crim. P. art. 771. We find no error in the trial court's denying the defendant's motions for a mistrial. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
In the third assignment of error, the defendant contends that the evidence was insufficient to support the guilty verdicts. The defendant notes that there is no dispute that hydrocodone and alprazolam were inside the vehicle and that the drugs belonged to her. She reiterates her trial argument that she had a valid prescription for these medications. The defendant contends that she had no knowledge of or intent to possess the hydromorphone found concealed in a cigarette box in the center console of her stepfather's vehicle. She further contends that she had borrowed her stepfather's recently-purchased vehicle for the first time on the date in question.
In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard of appellate review, adopted by the Legislature in enacting La. Code Crim. P. art. 821, is whether the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Brown, XXXX-XXXX, p. 22 (La. 4/12105), 907 So.2d 1, 18. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, XXXX-XXXX, p. 5 (La. App. 1st Cir. 2/14/03), 845 So.2d 416, 420.
As the trier of fact, a jury is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Richardson, 459 So.2d at 38. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984).
Louisiana Revised Statutes 40:967C states, in pertinent part:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, as provided in R.S. 40:978 while acting in the course of his professional practice, or except as otherwise authorized by this Part.
Louisiana Revised Statutes 40:978 states in pertinent part that:
A. Except when dispensed or administered directly by a medical practitioner or administered by a person authorized to administer by such practitioner, other than a pharmacist, to an ultimate user, no controlled dangerous substance included in Schedule II, which is a prescription drug as determined under the Louisiana Revised Statutes, of 1950, may be dispensed or administered without the written prescription of a practitioner, except that in emergency situations, as prescribed by the department by regulation, such drug may be dispensed or administered upon oral prescription reduced promptly to writing and filed by the pharmacist. Prescriptions shall be retained in conformity with the requirements of R.S. 40:976. No prescription for a Schedule II substance may be refilled.
Louisiana Revised Statutes 40:969C states, in pertinent part:
It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule IV unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, or as provided in R.S. 40:978, while acting in the course of his professional practice or except as otherwise authorized by this Part.
Hydrocodone and hydromorphone are controlled dangerous substances pursuant to La. R.S. 40:964, Schedule II(A)(1)(k) & (1). Alprazolam is a controlled dangerous substance pursuant to La. R.S. 40:964, Schedule IV(28) (prior to 2006 amendment; B(1) of Schedule IV after La. Acts 2006, No. 56, sec.1).
Herein, the defendant does not contest her possession of the hydrocodone or alprazolam. As to those drugs, she merely argues that the State failed to refute her claim that those drugs were obtained pursuant to valid prescriptions. The defendant does contest the finding that she was in possession of hydromorphone.
The State is not required to show actual possession of the narcotics by a defendant in order to convict. Constructive possession is sufficient. A person is considered to be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. Also, a person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. However, the mere presence in the area where narcotics are discovered, or mere association with the person who does control the drug or the area where it is located, is insufficient to support a finding of constructive possession. State v. Smith, XXXX-XXXX, pp. 5-6 (La. App. 1st Cir. 12/31/03), 868 So.2d 794, 799.
A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. Smith, XXXX-XXXX at p. 6, 868 So.2d at 799.
Trahan testified that the defendant's speech was slurred and that she seemed as if she was intoxicated when he approached her on the date in question. Officer Detiveaux similarly testified that the defendant's speech was somewhat slurred, and that she was swaying and using the rear of the vehicle to balance herself. Officer Detiveaux further testified that the defendant responded negatively when asked if she was taking medication.
The defendant's stepfather, John Ordoyne, testified that he and the defendant were involved in a car accident sometime before the instant offenses. Ordoyne was the driver and the defendant was a passenger. According to Ordoyne, both he and the defendant were injured in the accident. Ordoyne specifically testified that the defendant developed chronic pain from the accident and he always took her to the clinic to get pain medication and treatment for her back. Ordoyne further confirmed that Dr. Kenneth Williams of the Stanton Trinity Medical Group prescribed medication to the defendant before April 7, 2005. He further confirmed that the clinic re-established in the Lafayette area, after Hurricane Katrina, under the name of Maximum Urgent Care and that the defendant obtained prescription from the new facility. Ordoyne testified that he allowed the defendant to use his vehicle to attend a medical appointment on the date in question. He further testified that the hydromorphone pills that were located in the cigarette box in the console of the vehicle were his prescribed medication. He stated that he did not inform the defendant of the presence of the hydromorphone. Ordoyne could not recall what statements he made to the police when he arrived to retrieve his vehicle after the defendant's arrest. The defense introduced a printout subpoenaed from Dekle's Drugstore, certified by the owner, showing that Ordoyne filled prescriptions for hydrocodone, alprazolam, Dilaudid (hydromorphone), and various other medications between March 13, 2004 and December 23, 2004.
The defendant also testified regarding injuries she received in a car accident that took place before the offenses. She stated that she suffered a lower-back injury during the accident. She could not remember the date of the accident. As heretofore noted, the defendant testified that she had a valid prescription for the drugs in the pill bottle that bore her name. The defendant testified that she went to the doctor on the date in question because she had been feeling sick. Blood was drawn, and she found out that she was pregnant. As to her condition at the time she was approached by security and HPD officers, the defendant testified that she had taken some Zanbar (alprazolam) and was sleeping in the parking lot because she was not capable of driving. The defense introduced a copy of a prescription for hydrocodone and alprazolam, issued by Dr. Kenneth Williams of Maximum Pain Management subsequent to the instant offenses, which was dated September 28, 2005.
Rebuttal State witness Detective Blake Tabor of HPD arrived on the scene as back-up for Officer Detiveaux. Detective Tabor was present when the vehicle was released to Ordoyne. Detective Tabor testified that after he informed Ordoyne of the reason for his stepdaughter's arrest, Ordoyne stated that he had some Dilaudid (hydromorphone) missing and that he believed that the defendant had stolen it.
As to counts one and two, we note that the State is not required to prove the absence of a prescription. The burden of showing that the controlled dangerous substance was possessed pursuant to a valid prescription was on the defendant as an affirmative defense to the crime of possession. State v. Rodriguez, 554 So.2d 269, 270 (La. App. 3d Cir. 1989), writ granted in part, denied in part on other grounds, 558 So.2d 595 (La. 1990). A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La. 1992). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Azema, 633 So.2d 723, 727 (La. App. 1st Cir. 1993), writ denied, 94-0141 (La. 4/29/94), 637 So.2d 460; State v. Quinn, 479 So.2d 592, 596 (La. App. 1st Cir. 1985). The jury obviously rejected the defendant's hypothesis of innocence that these drugs were obtained pursuant to valid prescriptions. We find such rejection reasonable.
We further find that the defendant exercised dominion and control sufficient to constitute possession of the hydromorphone located in the vehicle's console. While Ordoyne stated that he had difficulty recalling statements that were made on the date in question, he did not affirmatively deny stating that the defendant took his hydromorphone. The defendant had easy access and a close physical proximity to the area where the drugs were found: the center console of the vehicle. Further, there was evidence of recent drug use considering the defendant's condition at the time and her admission that she had taken some Zanbar. Thus, the jury was reasonable in rejecting the hypothesis of innocence that the defendant was unaware of the presence of the hydromorphone. Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that all of the essential elements of the offenses of possession of Schedule II and Schedule IV controlled dangerous substances were proven beyond a reasonable doubt. For the above reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In the final assignment of error, the defendant notes that the offenses stemmed from a single incident and a single arrest. The defendant contends that the trial court did not state any specific reasons for imposing the sentences consecutively. She notes that her background does not suggest that she is a grave risk to the community, the crimes were not serious or dangerous so as to warrant consecutive sentences, and there was no allegation that she disregarded property belonging to someone else. The defendant further notes that she is a good candidate for rehabilitation and that she has children. Finally, the defendant notes that she avoided potential danger to others at the time of the offenses by sitting in the parked vehicle as opposed to driving in her condition.
A thorough review of the record indicates the defendant's attorney below did not make a written or oral motion to reconsider sentence. Under La. Code Crim. P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence shall preclude the defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. Accordingly, the defendant is procedurally barred from having the instant assignment of error reviewed. State v. Felder, 2000-2887, p. 10 (La. App. 1st Cir, 9/28/01), 809 So.2d 360, 369, writ denied, XXXX-XXXX (La. 10/25/02), 827 So.2d 1173; State v. Duncan, 94-1563, p. 2 (La. App. 1st Cir. 12/15/95), 667 So.2d 1141, 1143 (en banc per curiam).

REVIEW FOR ERROR
The defendant asks that this court examine the record for error under La. Code Crim. P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under La. Code Crim. P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See State v. Price, 2005-2514, pp. 18-22 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 123-25 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So.2d 1277.

DECREE
For the reasons outlined hereinabove, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
GUIDRY, J., dissenting in part and assigns reasons.
GUIDRY, J., dissenting in part.
I disagree with the majority's determination that the trial court did not abuse its discretion in granting the State's motion in limine. The evidence in question is highly relevant as it has a tendency to make more probable the existence of a valid prescription for two of the drugs of which the defendant was found in possession, hydrocodone and alprazolam. Although the defendant testified that she had a prescription for these two drugs, the purported copy of the prescription was excluded. The jury should have been allowed to observe, weigh, and determine the credibility of the evidence. Thus, I would find that the trial court abused its discretion in excluding the evidence in question, and that this error was not harmless because we cannot say that the exclusion did not contribute to the guilty verdict on counts one and two. The defendant's constitutional right to present a defense was jeopardized, and justice cannot be served by preventing the defendant from introducing evidence as to her defense. Accordingly, I would reverse the convictions as to counts one and two and remand for a new trial.